**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LARRY FREUDENBERG, Individually And On Behalf of All Others Similarly Situated, | Civil Action No. 07-cv-8538 (RWS) |
| Plaintiff, | |
| vs. | CLASS ACTION |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
| Defendants. | |
| WILLIAM BOSTON, Individually And On Behalf Of All Others Similarly Situated, | Civil Action No. 07-cv-8808 (RWS) |
| Plaintiff, | |
| vs. | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
| Defendants. | |
| ROBERT D. THURMAN, Individually And On Behalf Of All Others Similarly Situated, | Civil Action No. 07-cv-9651 (RWS) |
| Plaintiff, | |
| vs. | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
| Defendants. | |

| | |
|---|---|
| WENDY M. DAVIDSON, individually and on behalf of all others similarly situated, | Civil Action No. 07-cv-10400 (UA) |
|     Plaintiff, | |
|     vs. | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
|     Defendants. | |
| JOSHUA FERENC, individually and on behalf of all others similarly situated, | Civil Action No. 07-cv-10540 (SHS) |
|     Plaintiff, | |
|     vs. | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
|     Defendants. | |

### DECLARATION OF ELIZABETH A. SCHMID ESQ. IN SUPPORT OF THE MOTION OF THE KRISTEN-STRAXTON GROUP FOR CONSOLIDATION OF ALL RELATED CASES, APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF THE SELECTION OF LEAD COUNSEL

I, Elizabeth A. Schmid, Esq., hereby declare, under penalty of perjury, as follows:

    1.    I am an attorney at the law firm of Brower Piven, A Professional Corporation ("Brower Piven"). I submit this Declaration in support of the Motion Of The Kristen-Straxton Group For Consolidation Of All Related Cases, Appointment Of Lead Plaintiff And Approval Of The Selection Of Lead Counsel.

    2.    Attached hereto as Exhibit A is a true and correct copy of the complaint in *Larry Freudenberg v. E*TRADE Financial Corporation, et al.*, No. 07-cv-8538 (S.D.N.Y.) (the "*Freudenberg* Action").

3.    Attached hereto as Exhibit B is a true and correct copy of a Consolidated Schedule Of Transactions And Losses of the members of the Kristen-Straxton Group in E*Trade Financial Corporation securities during the alleged Class Period.

4.    Attached hereto as Exhibit C is a true and correct copy of the notice published through *Business Wire* on October 2, 2007 disseminated by counsel in the first filed action herein, the *Freudenberg* Action.

5.    Attached hereto as Exhibit D is a true and correct copy of the Plaintiff's Certification executed by Kristen Management Limited.

6.    Attached hereto as Exhibit E is a true and correct copy of the Plaintiff's Certification executed by Straxton Properties Inc.

7.    Attached hereto as Exhibit F is a true and correct copy of the Plaintiff's Certification executed by Javed Fiyaz.

8.    Attached hereto as Exhibit G is a true and correct copy of the sworn declaration executed by Vincent de Cannière as sole director of Kristen Management Limited and Straxton Properties Inc.

9.    Attached hereto as Exhibit H is a true and correct copy of the sworn declaration executed by Javed Fiyaz.

10.    Attached hereto as Exhibit I is a true and correct copy of the firm resume of Brower Piven.

Executed: December 3, 2007
        New York, New York

                                        /s/ *Elizabeth A. Schmid*
                                        Elizabeth A. Schmid

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

LARRY FREUDENBERG, Individually and        :     Civil Action No. 07-8538
on Behalf of All Others Similarly Situated,
                                           :     CLASS ACTION COMPLAINT FOR
                    Plaintiff,             :     VIOLATIONS OF FEDERAL SECURITIES
                                                 LAWS
                                           :
       vs.                                 :     DEMAND FOR JURY TRIAL
                                           :
E*TRADE FINANCIAL CORPORATION,             :
MITCHELL H. CAPLAN and ROBERT J.
SIMMONS,                                   :
                                           :
                    Defendants.            :

———————————————————— x

Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by E*TRADE Financial Corporation ("E*TRADE" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal class action on behalf of purchasers of the common stock of E*TRADE between December 14, 2006 and September 25, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act.

4.    Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

5.    In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff Larry Freudenberg, as set forth in the accompanying certification and incorporated by reference herein, purchased the common stock of E*TRADE at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant E*TRADE, through its subsidiaries, offers financial solutions to retail and institutional customers worldwide.  In addition, the Company offers mortgage, home equity, and margin and credit card products; real estate loans; and various consumer loans, including recreational vehicle, marine, commercial, automobile, and credit card loans.

8.      (a)      Defendant Mitchell H. Caplan ("Caplan") is, and was at all relevant times, Chief Executive Officer of E*TRADE.

        (b)      Defendant Robert J. Simmons ("Simmons") is, and was at all relevant times, Chief Financial Officer and Principal Accounting Officer of E*TRADE.

        (c)      Defendants Caplan and Simmons are collectively referred to herein as the "Individual Defendants."

9.      During the Class Period, the Individual Defendants, as senior executive officers and/or directors of E*TRADE, were privy to confidential and proprietary information concerning E*TRADE, its operations, finances, financial condition and present and future business prospects. The Individual Defendants also had access to material adverse non-public information concerning E*TRADE, as discussed in detail below.  Because of their positions with E*TRADE, the Individual Defendants had access to non-public information about its business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof, and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants

- 2 -

knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

10.    The Individual Defendants are liable as direct participants in the wrongs complained of herein.  In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of Section 20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein.  Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of E*TRADE's business.

11.    The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

12.    As senior executive officers and/or directors and as controlling persons of a publicly traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on The NASDAQ Stock Market ("NASDAQ") and governed by the federal securities laws, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to E*TRADE's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of E*TRADE's common stock would be

based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

13.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct which operated as a fraud or deceit on purchasers of E*TRADE's common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding E*TRADE's business, operations and management and the intrinsic value of E*TRADE's securities; (ii) allowed the Individual Defendants to sell 122,211 shares of their personally-held E*TRADE stock for gross proceeds in excess of $2.8 million; and (iii) caused Plaintiff and members of the Class to purchase E*TRADE's common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

14.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the common stock of E*TRADE between December 14, 2006 and September 25, 2007, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

15.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, E*TRADE common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by E*TRADE or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

16.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

17.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

18.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of E*TRADE;

(c)    whether the price of E*TRADE common stock was artificially inflated during the Class Period; and

(d)    to what extent the members of the Class have sustained damages and the proper measure of damages.

19.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

- 5 -

## SUBSTANTIVE ALLEGATIONS

20.    Defendant E*TRADE "provides financial services including trading, investing, banking and lending for retail and institutional customers."

21.    Since its inception, E*Trade generated revenues from the commissions it charged consumers who traded stocks on its website.  In 2003, the Company began to transition itself into more than just an online broker for stock trades.  At this time, in an attempt to cash in on the housing boom, the Company purchased mortgages, home-equity loans and other mortgage-related assets. Shortly thereafter, the Company began originating its own loans.  As a result, interest income from its loans became the main driver for the Company's growth as it became less reliant on brokerage fees.  Unbeknownst to investors, this growth would be short lived because the Company's mortgages, home-equity loans and other mortgage-related assets were composed of sub-prime loans. Furthermore, during the Class Period, the Company was experiencing a rise in delinquency rates in both its mortgage and home equity portfolios.  As a result, the Company's mortgages, home-equity loans and other mortgage-related assets were materially overvalued at all relevant times.

22.    The Class Period begins on December 14, 2006.  On that date, E*TRADE held conference call with analysts and investors to discuss the Company's 2007 earnings guidance.  In that regard, Defendant Caplan stated, in pertinent part, as follows:

> We have long said that we define ourselves as a growth Company based on our ability to generate annual revenue growth of 10% to 15%, earnings growth of 15% to 20%, with an operating margin approaching 50%.  From our current inflection point, the Company is positioned to not only meet, but exceed those growth targets in 2007. Based off the current 2006 consensus revenue and GAAP EPS estimate, the annual guidance we establish today reflects revenue growth of 14% to 24% from the low to high end of the range, GAAP EPS growth of 15% to 26%, with an annual operating margin of 47%.  Most importantly, we expect to deliver these strong results even as we make additional investments in marketing and service.

*        *        *

- 6 -

We expect to generate these results as a function of three core growth initiatives in 2007. The first is building on the success that we achieved year-to-date, we will continue to drive growth in target segment accounts. We will achieve this through a continued investment to attract and retain these target segment accounts while migrating Main Street into this segment, all through our investment relationship managers and marketing. Second, we will deliver continued improvement and profitability throughout the model as the result of greater integration, scale, and efficiencies, including the full-year benefit of Harrisdirect and Brown, as well as moving clearing under the bank. And third, we will generate accelerated growth through success in our Corporate Services and international operations, two avenues for growth that are unique to our model. In addition to these initiatives, but not embedded in our guidance, is the continued opportunity to supercharge growth, scale, and efficiency through accretive acquisitions in any of the core areas of our business. This includes opportunities both domestically, as well as internationally, and across transactions, cash and credit originations, or asset aggregation.

23.     On January 18, 2007, the Company issued a press release announcing its financial results for the fourth quarter and year end of 2006, the period ended December 31, 2006. For the quarter, the Company reported net income of $177 million and total net revenue of $629 million. Defendant Caplan, commenting on the results, stated, in pertinent part, as follows:

In 2006 the Company delivered a fourth consecutive year of record results while successfully integrating two key acquisitions and strategically investing in product, service and marketing to strengthen the future performance of the franchise. As a result of this success, we enter 2007 ideally positioned to capitalize on the secular growth trends of the industry, and we will continue to seek out targeted investments to build stronger client relationships and drive broader product engagement in the US and abroad.

24.     On April 18, 2007, the Company issued a press release announcing its financial results for the first quarter of 2007, the period ended March 31, 2007. For the quarter, the Company reported net income of $169.4 million and total net revenue of $645.0 million. Moreover, the Company revised its earnings guidance for 2007. Defendant Caplan, commenting on the results, stated, in pertinent part, as follows:

We are extremely pleased with the response to our marketing and service investments this past quarter which generated record net new accounts, with continued strong growth in our target segments, and record levels of customer assets and cash. The success we are seeing in attracting and retaining high-value customers is clearly beneficial to the long-term growth of the franchise.

- 7 -

Although the broad based markets have been strong, the recent volatility in the macroeconomic environment has affected retail customer behavior and engagement levels. As a result, we are reducing our 2007 earnings estimate to better reflect the muted retail environment we are now experiencing as compared to our expectations at the end of 2006.

25.    On April 18, 2007, the Company held a conference call with analysts and investors.

With regard to the Company's loan portfolio, Defendant Caplan stated:

With much having been reported about rising delinquencies and default rates among subprime asset portfolios, we also recognize that we are operating in a changing credit environment. Given our historic and continued strict discipline with respect to credit, we believe that the risk to our balance sheet is significantly mitigated compared to financial institutions with a more traditional mix of assets. We recognize that we are not immune to the current environment, and we are anticipating upward trends in delinquencies and charge-offs in our portfolio versus last year levels and even versus assumptions when we gave guidance in December.

To set some context, in 2006, we booked $45 million in provision for loan losses. Embedded in our guidance for 2007 last December, we forecasted an increase in our provisions of 51% to $68 million or to approximately $17 million per quarter, based both on the growth and the seasoning of our portfolio. In the first quarter, we reported $21 million of provision, an extra $4 million or $0.005 per share against earnings. We believe that this is the result of what is happening in the broader credit environment. If you annualize these trends, it translates into an additional $0.02 per share provision expense for 2007 over and above what was embedded in our original guidance. Exercising prudence and for guidance purposes, we are assuming provision expense of $96 million for the year or quarterly provision expenses of approximately $25 million for the balance of the year. This translates into $0.04 a share per headwind to our original earnings guidance for the year. This number represents a 2% reduction to the mid point of our original guidance and is relatively contained, given the benefit of the credit quality of our portfolio.

Look across our $37 billion loan portfolio, over $26 billion is in one to four-family mortgages and home equity products, $7 billion is margin debt from our investing customers, and the remainder is legacy consumer loans that are in run-off mode. Across the entire mortgage portfolio, our dollar weighted average FICO score remains at a solid 735. The average loan-to-value ratio is 73% and the average debt-to-income ratio is 35%, all numbers consistent with this time last year. In our one to four-family first lien portfolio, the average FICO is 738, LTV's averaged 68%, and DTI averages 34%. As we continue to grow our mortgage portfolio throughout this year, growth will tend to be more heavily weighted, 70% in one to four-family first lien products meeting that criteria. In second lien product, the average FICO is 732, LTV's averaged 79%, with an average DTI of 36%. *Specifically with respect to subprime loans, based on the standard industry definition of borrowers with FICO scores of 620 or below, we hold approximately $50 million of balances, or less than*

- 8 -

*one-fifth of 1% of our $29 billion whole loan portfolio., a de minimis amount.* [Emphasis added.]

In response to a question regarding an increase in the Company's provisions for loan losses,

Defendant Caplan stated:

MITCHELL CAPLAN: Happy to do it. So as I said, last year we had charge-offs as you saw of about $45 billion.

We assumed, as I said in the prepared remarks -- what? $45 million, sorry. $45 million. Yes, good point. [LAUGHTER] And this quarter, as we were really building the guidance for this here, don't forget we have had pretty consistent growth in the balance sheet. So under any circumstances, notwithstanding the fact that we have stayed completely disciplined about focusing on what we call prime and really super-prime borrowers, you're going to see an increase in charge-offs just as a result of the increasing balance sheet size. We also assumed that, as the balance sheet, which is growing – has been growing continues to season, you would see an uptick. So, as we were modeling for this year last year and then gave guidance in December, we had always assumed that it would go up to the $68 million or about $17 million a quarter. So in our model we had always presumed that that was going to be the case having nothing to do with a more difficult credit environment in any meaningful way, but simply as a result of both size of the balance sheet and seasoning of the balance sheet.

The incremental difference this quarter that we saw of the $17 million that we have expected to about $21 million we believe is the result of what's happening in the overall credit market, which is this discussion about what's happening in subprime, what's happening in Alt-A, and to the extent it that, more importantly, any of that is bleeding up into the general prime and super-prime market. Our view I guess going forward is -- and we were trying to be prudent about this -- is that as you looked forward for the rest of this year, we could simply have said, all right, we saw a $4 million unexpected increase. If you annualize that, it would have been somewhere in the neighborhood of $16 million or $0.02.

But we believe, given what we're seeing and what we're trying to prepare for, is the worst case scenario absent an absolute mortgage meltdown that you'd see a lost severity trend in the small percentage of our portfolio that we discussed, literally increasing by 50%. That that's what would drive the increase of the $28 million. You know, it may not come out to bear, but I guess in our mind, given everything we're seeing, we're better off being prudent around discussing this, and then putting context around the size of the overall balance sheet and then making it being clear for the first time ever that when you look at what the market is concerned about in either subprime or all day, one of them is less than one-fifth of 1% of the overall whole loan balances and the other one is less than 0.5%. *So I feel pretty good when I recognize that over 99% of our whole loan portfolio is, fact in, in those products which have traditionally not been impacted in markets like this.* [Emphasis added.]

- 9 -

26.     In response to the Company's revised guidance, on the next trading day, shares of the Company's stock fell $1.04 per share, or almost 5%, to close at $21.09 per share, on heavy trading volume.

27.     On July 25, 2007, the Company issued a press release announcing its financial results for the second quarter of 2007, the period ended June 30, 2007.  For the quarter, the Company reported net income of $159 million and total net revenue of $664 million.  Once again, the Company revised its earnings guidance for 2007 – narrowing the range from $1.55 - $1.75 per share to $1.58 - $1.72 per share.  Defendant Caplan, commenting on the results, stated, in pertinent part, as follows:

> Our second quarter results demonstrate the strategic and economic success we have achieved through investments in product, service and marketing over the past several years.  We delivered record performance in the quarter while improving the overall quality of revenue and earnings through continued growth and engagement led by our high-value, target segment accounts.

With regard to the Company's guidance, the press release stated:

> The Company also narrowed its 2007 pro-forma earnings guidance to a range of $1.58 - $1.72 per share from the previous range of $1.55 - $1.75, leaving the mid-point of $1.65 unchanged.  This pro-forma range excludes the $0.05 per share of expense for certain legal and regulatory matters realized during the second quarter.  Including these expenses, the Company now expects to earn $1.53 - $1.67 per share on a GAAP basis in 2007.

28.     On July 25, 2007, the Company held a conference call with analysts and investors.  With regard to the credit quality of the Company's loan portfolio, Defendants Caplan and Simmons stated:

> HOWARD CHEN: Okay.  Finally, Mitch, just switching gears, we're now a few quarters into the launch of the loan optimizer.  It seems like your margin loan balances are tracking higher.  From what you can see, is at all of function of your customers shifting their leverage away from HELOCs or credit cards to margin loans or is that simply just a function of overall equity market appreciation? Put another way, are you happy with the way that the loan optimizing is progressing?

- 10 -

MITCHELL CAPLAN: Yes, but again it is early days and so we would hope to continue to see -- has the loan optimizer been as successful as the cash optimizer? No. But again, it is early days and we expected it to take longer.

When you think about the growth that we experienced in margin in this past quarter and, again, I think what we have seen so far in Q3, we think that most of that is driven, whether it is the loan optimizer or otherwise, by continued engagement within the target segment.

JARRETT LILIEN: The thing is, the loan optimizer is a good awareness tool right now and it is doing its part, but just reiterating what Mitch said, the real growth is additional accounts. It is the growth in the target segment that is driving -- drives 76% of our revenues. It grew 29% in the quarter. That is what is driving assets, cash, DARTs, and margin.

HOWARD CHEN: Okay, thanks, Jerrett. Thanks, Mitch.

ROBERT SIMMONS: Let me clarify one other point that was made earlier by Mitch. It was a question around the vintages and stuff. I think if you look at our total book as of the end of this quarter, you can see that the growth in our loan book came exclusively in one to fours and margin, which are our highest quality loan categories. If you look at our consumer and our HELOC book, they were both down. So the question with respect to vintages, we do not have zero in '06 vintages in our book. We will give you some more details when we file our Q. But just wanted to clarify that the reduction of $400 million related to our HELOC book this quarter and we would expect that sort of trend to continue.

MITCHELL CAPLAN: Right, and I guess I was responding to was what Matt [Drury], who was sitting next to me, was talking about, which is within the '06 vintage, *we have zero in subprime.* So I think that was the issue that I was responding to and I guess the sheet of paper that I have been seeing. *So again, our subprime quarter-over-quarter continued to stay flat and declined a bit. Then what could be thought of as subprime, I guess, in the '06 vintage is zero at this point.* [Emphasis added.]

29.    Upon this news, on the next trading day, shares of the Company's stock fell $1.41 per share, or over 7%, to close at $19.05 per share.

30.    From August 13, 2007 to August 16, 2007, shares of the Company's stock fell $3.46 per share, or approximately 23%.

31.    On August 16, 2007, the Company issued a press release announcing the credit quality of its mortgage and securities portfolios. In that regard, the press release stated:

- 11 -

Management maintains that it does not believe that the current market capitalization accurately reflects the financial strength and performance of the business.

Selected highlights from the presentation include:

• The Company's $15.7 billion first lien mortgage portfolio is supported by high FICO scores, low

Loan-to-Value ratios (LTV) and private mortgage insurance

• All first lien mortgage loans with an 80% or higher LTV are protected by private mortgage insurance

• $9.2 billion, or 74%, of its home equity portfolio is to borrowers with FICO scores of 700 and higher

• $12.6 billion, or 99%, of mortgage-backed securities are rated AAA

• 97% of its Asset-backed Securities portfolio is rated investment grade

• Consistent and growing base of retail customer cash

• $10 billion in excess wholesale borrowing capacity from the Federal Home Loan Bank

32.     On August 16, 2007, in an article entitled *E\*Trade Bounces back*, TheStreet.com reported that "Ratings agency Egan-Jones downgraded E\*Trade debt to to B+ from BB-, saying the value of E\*Trade's $46.1 billion of mortgages and loans receivable 'probably needs to be marked down.'" With regard to the Company's mortgage portfolio, the article quoted an E\*Trade spokeswoman as stating:

> We continue to reiterate that while the volatility of the mortgage industry does impact us, *the financial health of the company is sound*. We believe the fear reflected in the current market capitalization is ***unfounded*** and are working diligently with investors to reassure them of the franchises' strength. [Emphasis added.]

33.     The statements referenced above in ¶¶22-25, 27-28 and 31-32 were materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them:

- 12 -

(a)    that the Company was experiencing a rise in delinquency rates in its mortgage and home equity portfolios;

(b)    that the Company failed to timely record an impairment on its mortgage and home equity portfolios;

(c)    that the Company's securities portfolio, which includes assets backed by mortgages, was materially overvalued; and

(d)    that based on the foregoing, Defendants' positive statements about the Company's earnings and prospects were lacking in a reasonable basis at all times.

34.    On September 17, 2007, the Company issued a press release announcing that it will exit the wholesale mortgage and it is revising its guidance for 2007, among other things. In that regard, the press release stated:

> The Company is exiting or restructuring non-core businesses that lack a direct and strategic connection with its retail customers. The Company is also accelerating plans to shift the composition of its balance sheet toward retail assets and liabilities and to synchronize balance sheet growth with customer engagement. In addition, the Company is increasing the provision for loan losses due to charge-offs expected as a result of the disturbance in the credit markets. As a result of these actions, E*TRADE FINANCIAL is revising 2007 earnings guidance to account for higher provision for loan losses, potential securities impairments, reduced balance sheet growth and restructuring charges. Despite these factors, the Company confirms that its balance sheet funding sources remain sound and the Company remains well capitalized based on regulatory standards.

> *        *        *

> The specific details of the plan, and expected financial implications (all figures are pre-tax, with the exception of EPS and net income), include:

> -- Balance sheet growth and composition strategy. For the foreseeable future, balance sheet growth, if any, will be driven by the continued growth in cash and deposit balances from retail investing and trading customers. Through at least 2008, interest-earning assets will remain relatively flat with third quarter levels, with growth in customer cash and deposits used to replace wholesale fundings. The Company plans to reduce balances in home equity, consumer loans and securities, replacing these assets as they pay down or mature with margin debt and prime first lien mortgages from retail customers. The planned run-off in home equity loans,

- 13 -

consumer loans and securities will reduce both the overall level of risk within the portfolio and expected future loss levels. Through this initiative, the composition of the balance sheet will shift significantly toward retail assets and liabilities, reducing wholesale contributions to revenue and net income. The Company anticipates making this transition in an orderly fashion over the next 18-24 months. Given the expectations for limited balance sheet growth going forward, the capital needs of the overall business will be reduced - creating opportunities in higher return investments such as accelerated share and debt repurchase activity or other initiatives to strengthen the business.

-- Increased allowance for loan losses. Given the significant deterioration in the mortgage market in August and particularly the pace of change in the performance of home equity loans in August, *the Company expects charge-offs of $95 million dollars and total provision expense of $245 million in the second half of 2007.* The majority of this provision is expected to be recorded in the third quarter. With this additional reserve, allowance for loan losses as a percentage of non-performing loans is expected to increase to 75 percent based on assumptions for the second half of the year, up from 45 percent on June 30, 2007. Within home equity loans, where the Company and the marketplace have seen the most significant stress, the coverage will be approximately 100 percent, up from 51 percent as of June 30, 2007.

-- Potential for securities impairments. *Embedded in the Company's modified guidance is an assumed securities impairment of up to $100 million in the second half of 2007.* The expected impairments in the guidance are predominantly related to deterioration in the performance of asset-backed securities comprised of second lien loans and CDOs (collateralized debt obligations).

-- Exiting and restructuring non-core businesses. The Company will exit its wholesale mortgage operations and will streamline its direct mortgage lending business to focus on its retail franchise. In addition, the Company will restructure its institutional sales trading business in a manner to better align it with retail activity. *Total severance, restructuring and other exit charges are estimated to be approximately $32 million, the majority of which will occur in the fourth quarter.*

As a result of the actions outlined above, the Company is revising its earnings outlook for 2007 to account for 1) higher provision for loan losses; 2) potential securities impairments; 3) slower balance sheet growth and composition expectations; and 4) exit and other restructuring charges. *For the full year 2007, E\*TRADE FINANCIAL expects GAAP net income of between $450 million and $500 million, and earnings per share of between $1.05 and $1.15 per share. This is down from its previous range of $1.53 to $1.67.* [Emphasis added.]

35.    Upon this news, shares of the Company's stock fell $2.32 per share, or over 15%, over the next six trading days as the investing public digested the news.

- 14 -

36.    The market for E*TRADE common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, E*TRADE's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired E*TRADE's common stock relying upon the integrity of the market price of E*TRADE's common stock and market information relating to E*TRADE, and have been damaged thereby.

37.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of E*TRADE's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

38.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about E*TRADE's business, prospects and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of E*TRADE and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages

complained of herein when the truth was revealed and the inflation came out of the price of E*Trade stock.

## Additional Scienter Allegations

39.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding E*TRADE, their control over, and/or receipt and/or modification of E*TRADE's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning E*TRADE, participated in the fraudulent scheme alleged herein.

40.     Defendants were motivated to engage in this course of conduct in order to allow the Individual Defendants to sell 122,211 shares of their personally-held E*TRADE stock for gross proceeds in excess of $2.8 million. The insider shares sold during the Class Period are set forth more fully in the following chart:

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| MITCHELL CAPLAN | 2/26/2007 | 72,211 | $24.08 | $1,738,841 |
| | | 72,211 | | $1,738,841 |
| | | | | |
| ROBERT SIMMONS | 1/29/2007 | 5,000 | $23.85 | $119,250 |
| | 1/29/2007 | 3,070 | $23.90 | $73,373 |
| | 1/29/2007 | 3,000 | $23.89 | $71,670 |
| | 1/29/2007 | 2,663 | $23.88 | $63,592 |
| | 1/29/2007 | 2,000 | $23.82 | $47,640 |
| | 1/29/2007 | 2,000 | $23.87 | $47,740 |
| | 1/29/2007 | 2,000 | $23.93 | $47,860 |
| | 1/29/2007 | 1,930 | $23.94 | $46,204 |
| | 1/29/2007 | 1,337 | $23.84 | $31,874 |
| | 1/29/2007 | 1,000 | $23.86 | $23,860 |

| | 1/29/2007 | 1,000 | $23.92 | $23,920 |
|---|---|---|---|---|
| | 4/23/2007 | 10,000 | $21.80 | $218,000 |
| | 4/23/2007 | 5,000 | $21.65 | $108,250 |
| | 4/23/2007 | 5,000 | $21.70 | $108,500 |
| | 4/23/2007 | 2,500 | $21.75 | $54,375 |
| | 4/23/2007 | 2,500 | $21.90 | $54,750 |
| | | 50,000 | | $1,140,859 |
| | | | | |
| | Total: | 122,211 | | $2,879,700 |

### Applicability of Presumption of Reliance:
### Fraud on the Market Doctrine

41.    At all relevant times, the market for E*TRADE's common stock was an efficient

market for the following reasons, among others:

(a)    E*TRADE common stock met the requirements for listing, and was listed and

actively traded on the NASDAQ, a highly efficient and automated market;

(b)    as a regulated issuer, E*TRADE filed periodic public reports with the SEC

and the NASDAQ;

(c)    E*TRADE regularly communicated with public investors via established

market communication mechanisms, including regular disseminations of press releases on the

national circuits of major newswire services and other wide-ranging public disclosures, such as

communications with the financial press and other similar reporting services; and

(d)    E*TRADE was followed by several securities analysts employed by major

brokerage firms who wrote reports which were distributed to the sales force and certain customers of

their respective brokerage firms. Each of these reports was publicly available and entered the public

marketplace.

42.    As a result of the foregoing, the market for E*TRADE common stock promptly

digested current information regarding E*TRADE from all publicly available sources and reflected

such information in the prices of the stock. Under these circumstances, all purchasers of E*TRADE

- 17 -

common stock during the Class Period suffered similar injury through their purchase of E*TRADE common stock at artificially inflated prices and a presumption of reliance applies.

### No Safe Harbor

43.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of E*TRADE who knew that those statements were false when made.

### COUNT I

### Violation of Section 10(b) of
### the Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

44.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.     During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

46.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

47.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for E*TRADE common stock. Plaintiff and the Class would not have purchased E*TRADE common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

48.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of E*TRADE common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of
### the Exchange Act Against the Individual Defendants

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of E*TRADE within the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of E*TRADE, and their ownership of E*TRADE stock, the Individual Defendants had the power and authority to cause E*TRADE to engage in the wrongful conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

- 19 -

A.      Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  October 2, 2007                    COUGHLIN STOIA GELLER
                                             RUDMAN & ROBBINS LLP
                                           SAMUEL H. RUDMAN
                                           DAVID A. ROSENFELD
                                           MARIO ALBA, JR.


                                                   /S/ David A. Rosenfeld
                                           _____
                                           DAVID A. ROSENFELD

                                           58 S Service Road, Suite 200
                                           Melville, NY 11747
                                           Telephone: 631/367-7100
                                           631/367-1173 (fax)

                                           Attorneys for Plaintiff

- 20 -

# EXHIBIT B

**E\*Trade Financial Corporation Securities Litigation**

CONSOLIDATED SCHEDULE OF TRANSACTIONS AND LOSSES
FOR THE KRISTEN - STRAXTON GROUP

| Trade Date of Purchase/Sale | Purchased (P) / Sold (S) | # of Shares Per CFDs* | Price Per Share | (Cost)/ Proceeds | Net Gain/(Loss) |
|---|---|---|---|---|---|
| **Kristen Management Limited** | | | | | |
| 6/6/07 | P | 500,000 | $25.5777 | ($12,788,850) | ($12,788,850) |
| 6/6/07 | P | 340,900 | $25.5594 | ($8,713,199) | ($21,502,049) |
| 6/27/07 | P | 250,000 | $22.1484 | ($5,537,100) | ($27,039,149) |
| 6/27/07 | P | 250,000 | $22.1086 | ($5,527,150) | ($32,566,299) |
| 7/2/07 | P | 100 | $22.1500 | ($2,215) | ($32,568,514) |
| 8/1/07 | S | 91,000 | $18.0000 | $1,638,000 | ($30,930,514) |
| 8/6/07 | S | 1,000,000 | $15.1151 | $15,115,100 | ($15,815,414) |
| 8/15/07 | S | 250,000 | $14.9811 | $3,745,275 | ($12,070,139) |

**Total:** ($12,070,139)

| | | | | | |
|---|---|---|---|---|---|
| **Straxton Properties Inc.** | | | | | |
| 5/31/07 | P | 100,000 | $23.9844 | ($2,398,440) | ($2,398,440) |
| 5/31/07 | P | 200,000 | $24.0443 | ($4,808,860) | ($7,207,300) |
| 5/31/07 | P | 200,000 | $24.1125 | ($4,822,500) | ($12,029,800) |
| 5/31/07 | P | 250,000 | $23.9812 | ($5,995,300) | ($18,025,100) |
| 5/31/07 | P | 250,000 | $23.9989 | ($5,999,725) | ($24,024,825) |
| 6/1/07 | P | 50,000 | $24.0084 | ($1,200,420) | ($25,225,245) |
| 6/1/07 | P | 50,000 | $24.0500 | ($1,202,500) | ($26,427,745) |
| 6/1/07 | P | 50,000 | $24.0500 | ($1,202,500) | ($27,630,245) |
| 6/1/07 | P | 100,000 | $23.9492 | ($2,394,920) | ($30,025,165) |
| 6/6/07 | P | 250,000 | $24.5046 | ($6,126,150) | ($36,151,315) |
| 6/6/07 | P | 250,000 | $24.6821 | ($6,170,525) | ($42,321,840) |
| 6/6/07 | P | 250,000 | $24.9186 | ($6,229,650) | ($48,551,490) |
| 6/6/07 | P | 275,000 | $25.5859 | ($7,036,123) | ($55,587,613) |
| 6/6/07 | P | 500,000 | $24.5558 | ($12,277,900) | ($67,865,513) |
| 6/6/07 | P | 500,000 | $24.7003 | ($12,350,150) | ($80,215,663) |
| 6/6/07 | P | 500,000 | $24.9947 | ($12,497,350) | ($92,713,013) |
| 6/6/07 | P | 500,000 | $25.1384 | ($12,569,200) | ($105,282,213) |
| 6/6/07 | P | 500,000 | $25.1953 | ($12,597,650) | ($117,879,863) |
| 6/6/07 | P | 500,000 | $25.3298 | ($12,664,900) | ($130,544,763) |
| 6/6/07 | P | 500,000 | $25.7001 | ($12,850,050) | ($143,394,813) |
| 6/6/07 | P | 500,000 | $25.6632 | ($12,831,600) | ($156,226,413) |
| 6/6/07 | P | 500,000 | $25.5574 | ($12,778,700) | ($169,005,113) |
| 6/6/07 | P | 159,100 | $25.5594 | ($4,066,501) | ($173,071,613) |

* Contracts For Difference

| | | | | | |
|---|---|---|---|---|---|
| 6/7/07 | P | 250,000 | $25.5878 | ($6,396,950) | ($179,468,563) |
| 6/14/07 | P | 75,000 | $24.7496 | ($1,856,220) | ($181,324,783) |
| 6/27/07 | P | 135,000 | $22.1894 | ($2,995,569) | ($184,320,352) |
| 6/27/07 | P | 400,000 | $22.0393 | ($8,815,720) | ($193,136,072) |
| 7/2/07 | P | 9,000 | $22.1500 | ($199,350) | ($193,335,422) |
| 7/2/07 | P | 50,000 | $22.1203 | ($1,106,015) | ($194,441,437) |
| 7/2/07 | P | 100,000 | $22.1206 | ($2,212,060) | ($196,653,497) |
| 7/2/07 | P | 115,000 | $22.0955 | ($2,540,983) | ($199,194,480) |
| 8/1/07 | S | 500,000 | $18.0000 | $9,000,000 | ($190,194,480) |
| 8/1/07 | S | 409,000 | $18.0000 | $7,362,000 | ($182,832,480) |
| 8/6/07 | S | 250,000 | $15.5405 | $3,885,125 | ($178,947,355) |
| 8/6/07 | S | 250,000 | $15.4810 | $3,870,250 | ($175,077,105) |
| 8/6/07 | S | 159,000 | $15.5900 | $2,478,810 | ($172,598,295) |
| 8/6/07 | S | 159,000 | $15.5002 | $2,464,532 | ($170,133,763) |
| 8/6/07 | S | 91,000 | $15.5900 | $1,418,690 | ($168,715,073) |
| 8/6/07 | S | 91,000 | $15.5002 | $1,410,518 | ($167,304,555) |
| 8/15/07 | S | 250,000 | $15.0141 | $3,753,525 | ($163,551,030) |
| 8/15/07 | S | 250,000 | $14.0005 | $3,500,125 | ($160,050,905) |
| 8/15/07 | S | 250,000 | $14.0000 | $3,500,000 | ($156,550,905) |
| 8/15/07 | S | 159,000 | $15.0097 | $2,386,542 | ($154,164,362) |
| 8/15/07 | S | 159,000 | $14.0025 | $2,226,398 | ($151,937,965) |
| 8/15/07 | S | 159,000 | $14.0011 | $2,226,175 | ($149,711,790) |
| 8/15/07 | S | 91,000 | $15.0097 | $1,365,883 | ($148,345,907) |
| 8/15/07 | S | 91,000 | $14.0025 | $1,274,228 | ($147,071,680) |
| 8/15/07 | S | 91,000 | $14.0011 | $1,274,100 | ($145,797,580) |
| 8/16/07 | S | 500,000 | $10.3126 | $5,156,300 | ($140,641,280) |
| 8/16/07 | S | 500,000 | $10.2646 | $5,132,300 | ($135,508,980) |
| 8/16/07 | S | 250,000 | $11.1000 | $2,775,000 | ($132,733,980) |
| 8/16/07 | S | 250,000 | $11.0493 | $2,762,325 | ($129,971,655) |
| 8/16/07 | S | 250,000 | $10.9514 | $2,737,850 | ($127,233,805) |
| 8/16/07 | S | 250,000 | $10.3831 | $2,595,775 | ($124,638,030) |
| 8/16/07 | S | 250,000 | $10.4155 | $2,603,875 | ($122,034,155) |
| 8/16/07 | S | 250,000 | $11.6102 | $2,902,550 | ($119,131,605) |
| 8/16/07 | S | 250,000 | $11.3678 | $2,841,950 | ($116,289,655) |
| 8/16/07 | S | 250,000 | $11.8603 | $2,965,075 | ($113,324,580) |
| 8/16/07 | S | 208,000 | $11.2106 | $2,331,805 | ($110,992,775) |
| 8/16/07 | S | 159,000 | $11.9282 | $1,896,584 | ($109,096,191) |
| 8/16/07 | S | 115,000 | $11.0456 | $1,270,244 | ($107,825,947) |
| 8/16/07 | S | 101,100 | $10.8721 | $1,099,169 | ($106,726,778) |
| 8/16/07 | S | 100,000 | $10.6001 | $1,060,010 | ($105,666,768) |
| 8/16/07 | S | 100,000 | $11.8256 | $1,182,560 | ($104,484,208) |
| 8/16/07 | S | 100,000 | $11.8408 | $1,184,080 | ($103,300,128) |
| 8/16/07 | S | 100,000 | $11.9023 | $1,190,230 | ($102,109,898) |

| 8/16/07 | S | 91,000 | $11.9282 | $1,085,466 | ($101,024,431) |
|---------|---|--------|----------|------------|----------------|
| 8/16/07 | S | 84,000 | $11.8005 | $991,242 | ($100,033,189) |
| 8/16/07 | S | 75,000 | $11.8080 | $885,600 | ($99,147,589) |
| 8/16/07 | S | 67,000 | $11.0456 | $740,055 | ($98,407,534) |
| 8/16/07 | S | 59,000 | $11.9502 | $705,062 | ($97,702,472) |
| 8/16/07 | S | 58,000 | $11.8714 | $688,541 | ($97,013,931) |
| 8/16/07 | S | 50,000 | $11.8000 | $590,000 | ($96,423,931) |
| 8/16/07 | S | 50,000 | $11.0456 | $552,280 | ($95,871,651) |
| 8/16/07 | S | 41,000 | $11.9502 | $489,958 | ($95,381,693) |
| 8/16/07 | S | 33,000 | $11.2106 | $369,950 | ($95,011,743) |
| 8/16/07 | S | 18,000 | $11.0456 | $198,821 | ($94,812,922) |
| 8/16/07 | S | 16,000 | $11.8005 | $188,808 | ($94,624,114) |
| 8/16/07 | S | 16,000 | $11.8080 | $188,928 | ($94,435,186) |
| 8/16/07 | S | 9,000 | $11.8080 | $106,272 | ($94,328,914) |
| 8/16/07 | S | 9,000 | $11.2106 | $100,895 | ($94,228,019) |

**Total:    ($94,228,019)**

### Javed Fiyaz

| 6/18/07 | P | 1,000,000 | $24.0701 | ($24,070,100) | ($24,070,100) |
|---------|---|-----------|----------|---------------|----------------|
| 7/6/07 | P | 200,000 | $22.8298 | ($4,565,960) | ($28,636,060) |
| 7/9/07 | P | 800,000 | $23.2206 | ($18,576,480) | ($47,212,540) |
| 7/10/07 | P | 455,663 | $22.7245 | ($10,354,714) | ($57,567,254) |
| 7/11/07 | P | 400,000 | $22.7125 | ($9,085,000) | ($66,652,254) |
| 7/25/07 | P | 500,000 | $20.2233 | ($10,111,650) | ($76,763,904) |
| 8/17/07 | S | 1,755,327 | $15.0552 | $26,426,799 | ($50,337,105) |
| 8/20/07 | S | 1,600,336 | $14.5093 | $23,219,755 | ($27,117,350) |

**Total:    ($27,117,350)**

| Combined Net Loss |
|-------------------|
| **($133,415,508)** |

** Calculations of losses based on FIFO and LIFO accounting result in the same
loss figure as the net loss.

# EXHIBIT C

# Coughlin Stoia Geller Rudman & Robbins LLP Files Class Action Suit against E*TRADE Financial Corporation

Tuesday October 2, 6:37 pm ET

NEW YORK--(BUSINESS WIRE)--Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") (http://www.csgrr.com/cases/etrade/) today announced that a class action has been commenced in the United States District Court for the Southern District of New York on behalf of purchasers of the common stock of E*TRADE Financial Corporation ("E*TRADE" or the "Company") (NASDAQ: ETFC - News) between December 14, 2006 and September 25, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

If you wish to serve as lead plaintiff, you must move the Court no later than 60 days from today. If you wish to discuss this action or have any questions concerning this notice or your rights or interests, please contact plaintiff's counsel, Samuel H. Rudman or David A. Rosenfeld of Coughlin Stoia at 800/449-4900 or 619/231-1058, or via e-mail at djr@csgrr.com. If you are a member of this class, you can view a copy of the complaint as filed or join this class action online at http://www.csgrr.com/cases/etrade/. Any member of the purported class may move the Court to serve as lead plaintiff through counsel of their choice, or may choose to do nothing and remain an absent class member.

The complaint charges E*TRADE and certain of its officers and directors with violations of the Exchange Act. E*TRADE, through its subsidiaries, offers financial solutions to retail and institutional customers worldwide. In addition, the Company offers mortgage, home equity, and margin and credit card products; real estate loans; and various consumer loans, including recreational vehicle, marine, commercial, automobile, and credit card loans.

According to the complaint, during the Class Period, defendants issued materially false and misleading statements that misrepresented and failed to disclose: (a) that the Company was experiencing a rise in delinquency rates in its mortgage and home equity portfolios; (b) that the Company failed to timely record an impairment on its mortgage and home equity portfolios; (c) that the Company's securities portfolio, which includes assets backed by mortgages, was materially overvalued; and (d) that based on the foregoing, Defendants' positive statements about the Company's earnings and prospects were lacking in a reasonable basis at all times.

On September 17, 2007, the Company announced that it will exit the wholesale mortgage and it is revising its guidance for 2007, among other things. Upon this news, shares of the Company's stock fell $2.32 per share, or over 15%, over the next six trading days as the investing public digested the news.

Plaintiff seeks to recover damages on behalf of a Class consisting of all persons other than Defendants who purchased the common stock of E*TRADE between December 14, 2006 and September 25, 2007, inclusive, seeking to pursue remedies under the Exchange Act. The plaintiff is represented by Coughlin Stoia, which has expertise in prosecuting investor class actions and extensive experience in actions involving financial fraud.

Coughlin Stoia, a 180-lawyer firm with offices in San Diego, San Francisco, Los Angeles, New York, Boca Raton, Washington, D.C., Houston and Philadelphia, is active in major litigations pending in federal and state courts throughout the United States and has taken a leading role in many important actions on behalf of defrauded investors, consumers, and companies, as well as victims of human rights violations. Coughlin Stoia lawyers have been responsible for more than $45 billion in aggregate recoveries. The Coughlin Stoia Web site (http://www.csgrr.com) has more information about the firm.

*Contact:*
Coughlin Stoia Geller Rudman & Robbins LLP
Samuel H. Rudman, 800-449-4900
David A. Rosenfeld
djr@csgrr.com

# EXHIBIT D

## PLAINTIFF'S CERTIFICATION

Kristen Management Limited ("Plaintiff"), by its director, Vincent de Cannière, declares that:

1.    Plaintiff has reviewed the complaint and authorized its filing.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

4.    A schedule of Plaintiff's transactions in E*TRADE Financial Corporation securities during the Class Period is attached hereto and adopted by reference herein.

5.    During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class under the federal securities laws.

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of November, 2007.        Kristen Management Limited

By: _____
     Vincent de Cannière, Director

Brower Piven, A Professional Corporation
The World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland 21202
Telephone:  410-332-0030
Facsimile:   410-685-1300
www.browerpiven.com

# Kristen Management Limited
## E*Trade Financial Corporation Securities Litigation
## Schedule of Transactions

| Date | Currency | Company | Type | Shares Per CFDs* | Price |
|------|----------|---------|------|------------------|-------|
| 6/6/07 | USD | E*Trade | BUY | 500,000 | $25.5777 |
| 6/6/07 | USD | E*Trade | BUY | 340,900 | $25.5594 |
| 6/27/07 | USD | E*Trade | BUY | 250,000 | $22.1484 |
| 6/27/07 | USD | E*Trade | BUY | 250,000 | $22.1086 |
| 7/2/07 | USD | E*Trade | BUY | 100 | $22.1500 |
| 8/1/07 | USD | E*Trade | SELL | 91,000 | $18.0000 |
| 8/6/07 | USD | E*Trade | SELL | 1,000,000 | $15.1151 |
| 8/15/07 | USD | E*Trade | SELL | 250,000 | $14.9811 |

* Contracts For Difference

# EXHIBIT E

## PLAINTIFF'S CERTIFICATION

Straxton Properties Inc. ("Plaintiff"), by its director, Vincent de Cannière, declares that:

1.      Plaintiff has reviewed the complaint and authorized its filing.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

4.      A schedule of Plaintiff's transactions in E*TRADE Financial Corporation securities during the Class Period is attached hereto and adopted by reference herein.

5.      During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class under the federal securities laws.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of November, 2007.              Straxton Properties Inc.


By: _____
       Vincent de Cannière, Director


Brower Piven, A Professional Corporation
The World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland 21202
Telephone:  410-332-0030
Facsimile:  410-685-1300
www.browerpiven.com

# Straxton Properties Inc.

## E*Trade Financial Corporation Securities Litigation
## Schedule of Transactions

| Date | Currency | Company | Type | Shares Per CFDs* | Price |
|---|---|---|---|---|---|
| 5/31/07 | USD | E*Trade | BUY | 100,000 | $23.9844 |
| 5/31/07 | USD | E*Trade | BUY | 200,000 | $24.0443 |
| 5/31/07 | USD | E*Trade | BUY | 200,000 | $24.1125 |
| 5/31/07 | USD | E*Trade | BUY | 250,000 | $23.9812 |
| 5/31/07 | USD | E*Trade | BUY | 250,000 | $23.9989 |
| 6/1/07 | USD | E*Trade | BUY | 50,000 | $24.0084 |
| 6/1/07 | USD | E*Trade | BUY | 50,000 | $24.0500 |
| 6/1/07 | USD | E*Trade | BUY | 50,000 | $24.0500 |
| 6/1/07 | USD | E*Trade | BUY | 100,000 | $23.9492 |
| 6/6/07 | USD | E*Trade | BUY | 250,000 | $24.5046 |
| 6/6/07 | USD | E*Trade | BUY | 250,000 | $24.6821 |
| 6/6/07 | USD | E*Trade | BUY | 250,000 | $24.9186 |
| 6/6/07 | USD | E*Trade | BUY | 275,000 | $25.5859 |
| 6/6/07 | USD | E*Trade | BUY | 500,000 | $24.5558 |
| 6/6/07 | USD | E*Trade | BUY | 500,000 | $24.7003 |
| 6/6/07 | USD | E*Trade | BUY | 500,000 | $24.9947 |
| 6/6/07 | USD | E*Trade | BUY | 500,000 | $25.1384 |
| 6/6/07 | USD | E*Trade | BUY | 500,000 | $25.1953 |
| 6/6/07 | USD | E*Trade | BUY | 500,000 | $25.3298 |
| 6/6/07 | USD | E*Trade | BUY | 500,000 | $25.7001 |
| 6/6/07 | USD | E*Trade | BUY | 500,000 | $25.6632 |
| 6/6/07 | USD | E*Trade | BUY | 500,000 | $25.5574 |
| 6/6/07 | USD | E*Trade | BUY | 159,100 | $25.5594 |
| 6/7/07 | USD | E*Trade | BUY | 250,000 | $25.5878 |
| 6/14/07 | USD | E*Trade | BUY | 75,000 | $24.7496 |
| 6/27/07 | USD | E*Trade | BUY | 135,000 | $22.1894 |
| 6/27/07 | USD | E*Trade | BUY | 400,000 | $22.0393 |
| 7/2/07 | USD | E*Trade | BUY | 9,000 | $22.1500 |
| 7/2/07 | USD | E*Trade | BUY | 50,000 | $22.1203 |
| 7/2/07 | USD | E*Trade | BUY | 100,000 | $22.1206 |
| 7/2/07 | USD | E*Trade | BUY | 115,000 | $22.0955 |
| 8/1/07 | USD | E*Trade | SELL | 500,000 | $18.0000 |
| 8/1/07 | USD | E*Trade | SELL | 409,000 | $18.0000 |
| 8/6/07 | USD | E*Trade | SELL | 250,000 | $15.5405 |
| 8/6/07 | USD | E*Trade | SELL | 250,000 | $15.4810 |
| 8/6/07 | USD | E*Trade | SELL | 159,000 | $15.5900 |
| 8/6/07 | USD | E*Trade | SELL | 159,000 | $15.5002 |
| 8/6/07 | USD | E*Trade | SELL | 91,000 | $15.5900 |

* Contracts For Difference

| Date | Currency | Company | Type | Shares Per CFDs | Price |
|------|----------|---------|------|-----------------|-------|
| 8/6/07 | USD | E*Trade | SELL | 91,000 | $15.5002 |
| 8/15/07 | USD | E*Trade | SELL | 250,000 | $15.0141 |
| 8/15/07 | USD | E*Trade | SELL | 250,000 | $14.0005 |
| 8/15/07 | USD | E*Trade | SELL | 250,000 | $14.0000 |
| 8/15/07 | USD | E*Trade | SELL | 159,000 | $15.0097 |
| 8/15/07 | USD | E*Trade | SELL | 159,000 | $14.0025 |
| 8/15/07 | USD | E*Trade | SELL | 159,000 | $14.0011 |
| 8/15/07 | USD | E*Trade | SELL | 91,000 | $15.0097 |
| 8/15/07 | USD | E*Trade | SELL | 91,000 | $14.0025 |
| 8/15/07 | USD | E*Trade | SELL | 91,000 | $14.0011 |
| 8/16/07 | USD | E*Trade | SELL | 500,000 | $10.3126 |
| 8/16/07 | USD | E*Trade | SELL | 500,000 | $10.2646 |
| 8/16/07 | USD | E*Trade | SELL | 250,000 | $11.1000 |
| 8/16/07 | USD | E*Trade | SELL | 250,000 | $11.0493 |
| 8/16/07 | USD | E*Trade | SELL | 250,000 | $10.9514 |
| 8/16/07 | USD | E*Trade | SELL | 250,000 | $10.3831 |
| 8/16/07 | USD | E*Trade | SELL | 250,000 | $10.4155 |
| 8/16/07 | USD | E*Trade | SELL | 250,000 | $11.6102 |
| 8/16/07 | USD | E*Trade | SELL | 250,000 | $11.3678 |
| 8/16/07 | USD | E*Trade | SELL | 250,000 | $11.8603 |
| 8/16/07 | USD | E*Trade | SELL | 208,000 | $11.2106 |
| 8/16/07 | USD | E*Trade | SELL | 159,000 | $11.9282 |
| 8/16/07 | USD | E*Trade | SELL | 115,000 | $11.0456 |
| 8/16/07 | USD | E*Trade | SELL | 101,100 | $10.8721 |
| 8/16/07 | USD | E*Trade | SELL | 100,000 | $10.6001 |
| 8/16/07 | USD | E*Trade | SELL | 100,000 | $11.8256 |
| 8/16/07 | USD | E*Trade | SELL | 100,000 | $11.8408 |
| 8/16/07 | USD | E*Trade | SELL | 100,000 | $11.9023 |
| 8/16/07 | USD | E*Trade | SELL | 91,000 | $11.9282 |
| 8/16/07 | USD | E*Trade | SELL | 84,000 | $11.8005 |
| 8/16/07 | USD | E*Trade | SELL | 75,000 | $11.8080 |
| 8/16/07 | USD | E*Trade | SELL | 67,000 | $11.0456 |
| 8/16/07 | USD | E*Trade | SELL | 59,000 | $11.9502 |
| 8/16/07 | USD | E*Trade | SELL | 58,000 | $11.8714 |
| 8/16/07 | USD | E*Trade | SELL | 50,000 | $11.8000 |
| 8/16/07 | USD | E*Trade | SELL | 50,000 | $11.0456 |
| 8/16/07 | USD | E*Trade | SELL | 41,000 | $11.9502 |
| 8/16/07 | USD | E*Trade | SELL | 33,000 | $11.2106 |
| 8/16/07 | USD | E*Trade | SELL | 18,000 | $11.0456 |
| 8/16/07 | USD | E*Trade | SELL | 16,000 | $11.8005 |
| 8/16/07 | USD | E*Trade | SELL | 16,000 | $11.8080 |
| 8/16/07 | USD | E*Trade | SELL | 9,000 | $11.8080 |
| 8/16/07 | USD | E*Trade | SELL | 9,000 | $11.2106 |

# EXHIBIT F

## PLAINTIFF'S CERTIFICATION

Javed Fiyaz ("Plaintiff") declares that:

1.      Plaintiff has reviewed the complaint and authorized its filing.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

4.      A schedule of Plaintiff's transactions in E*TRADE Financial Corporation securities during the Class Period is attached hereto and adopted by reference herein.

5.      During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class under the federal securities laws.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 30th day of November, 2007.

Javed Fiyaz

Brower Piven, A Professional Corporation
The World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland 21202
Telephone:  410-332-0030
Facsimile:   410-685-1300
www.browerpiven.com

# Javed Fiyaz

E*Trade Financial Corporation Securities Litigation
Schedule of Transactions

| Date | Currency | Company | Type | Shares Per CFDs* | Price |
|------|----------|---------|------|------------------|-------|
| 6/18/07 | USD | E*Trade | BUY | 1,000,000 | $24.0701 |
| 7/6/07 | USD | E*Trade | BUY | 200,000 | $22.8298 |
| 7/9/07 | USD | E*Trade | BUY | 800,000 | $23.2206 |
| 7/10/07 | USD | E*Trade | BUY | 455,663 | $22.7245 |
| 7/11/07 | USD | E*Trade | BUY | 400,000 | $22.7125 |
| 7/25/07 | USD | E*Trade | BUY | 500,000 | $20.2233 |
| 8/17/07 | USD | E*Trade | SELL | 1,755,327 | $15.0552 |
| 8/20/07 | USD | E*Trade | SELL | 1,600,336 | $14.5093 |

* Contracts For Difference

# EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LARRY FREUDENBERG, Individually And On Behalf of All Others Similarly Situated, | Civil Action No. 07-cv-8538 (RWS) |
|     Plaintiff, | |
|     vs. | CLASS ACTION |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
|     Defendants. | |
| WILLIAM BOSTON, Individually And On Behalf Of All Others Similarly Situated, | Civil Action No. 07-cv-8808 (RWS) |
|     Plaintiff, | |
|     vs. | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
|     Defendants. | |
| ROBERT D. THURMAN, Individually And On Behalf Of All Others Similarly Situated, | Civil Action No. 07-cv-9651 (RWS) |
|     Plaintiff, | |
|     vs. | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
|     Defendants. | |

| | |
|---|---|
| WENDY M. DAVIDSON, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS,<br><br>    Defendants. | Civil Action No. 07-cv-10400 (UA) |
| JOSHUA FERENC, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS,<br><br>    Defendants. | Civil Action No. 07-cv-10540 (SHS) |

## DECLARATION OF THE KRISTEN-STRAXTON GROUP IN SUPPORT OF ITS MOTION FOR CONSOLIDATION OF ALL RELATED CASES, APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF THE SELECTION OF LEAD COUNSEL

I, Vincent de Cannière, sole Director of Kristen Management Limited ("Kristen") and Straxton Properties Inc. ("Straxton"), declare, under penalty of perjury under the laws of the United States of America, as follows:

1.    I am the sole director and authorized signatory for Kristen and Straxton. Kristen and Straxton are investment companies with common ownership organized and existing under the laws of the British Virgin Islands. I am the sole manager of both companies, and I make the investment decisions for both companies, including the investments in E*Trade Financial Corporation ("E*Trade") securities. I have full

authority to act for Kristen and Straxton, including the authority to pursue possible legal claims that the companies may have.

2.     I respectfully submit this Declaration in Support of the Motion filed by the Kristen-Straxton Group for consolidation, appointment as Lead Plaintiff, and approval of its selection of lead counsel, Brower Piven. The Kristen-Straxton Group is comprised of Kristen, Straxton, and Javed Fiyaz. I have a long standing personal and business relationship with Mr. Fiyaz that precedes Kristen's and Straxton's investments in E*Trade securities at issue in the instant case.

3.     I understand that if the Kristen-Straxton Group is appointed lead plaintiff, it would owe a fiduciary duty to all members of the putative class to provide fair and adequate representation and to work actively with class counsel to obtain the largest possible recovery for the proposed class of E*Trade securities investors. The Kristen-Straxton Group is committed to vigorously prosecuting this action on behalf of itself and the class.

4.     The Kristen-Straxton Group will have no difficulty overseeing and participating in this litigation. I am prepared to travel to the United States and otherwise make myself available, as necessary, to prosecute the claims in the action. Kristen and Straxton will also fully cooperate with discovery.

5.     I understand that, as lead plaintiff, the Kristen-Straxton Group will be responsible for overseeing counsel. Mr. Fiyaz has selected me to lead the Kristen-Straxton Group, and act on his behalf, as well as for Kristen and Straxton, as liaison with Brower Piven to prosecute this litigation. I am prepared to do so on behalf of the Kristen-Straxton Group. I anticipate supervising counsel via telephone, email, and video

conference, as well as through face-to-face meetings. I have experience with the retention and supervision of counsel in the regular course of my business, and I foresee no difficulties in the management of counsel in this action.

6.     Moreover, Mr. Fiyaz and I have discussed how we will manage the litigation together as a lead plaintiff group. While I will be responsible for the day-to-day oversight of counsel and coordination of their efforts in the prosecution of the action, my colleagues and we will regularly consult together regarding the prosecution of this matter face-to-face, by telephone and by email, and we will make any non-ministerial decisions in the case based on a consensus as to how best to proceed.

Executed this 3rd day of December, 2007

_____
Vincent de Cannière

as Director of Kristen Management Limited and
as Director Straxton Properties Inc.

3

# EXHIBIT H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LARRY FREUDENBERG, Individually And On Behalf of All Others Similarly Situated, | Civil Action No. 07-cv-8538 (RWS) |
| Plaintiff, | |
| vs. | CLASS ACTION |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
| Defendants. | |
| WILLIAM BOSTON, Individually And On Behalf Of All Others Similarly Situated, | Civil Action No. 07-cv-8808 (RWS) |
| Plaintiff, | |
| vs. | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
| Defendants. | |
| ROBERT D. THURMAN, Individually And On Behalf Of All Others Similarly Situated, | Civil Action No. 07-cv-9651 (RWS) |
| Plaintiff, | |
| vs. | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
| Defendants. | |

| | |
|---|---|
| WENDY M. DAVIDSON, individually and on behalf of all others similarly situated, | Civil Action No. 07-cv-10400 (UA) |
| Plaintiff, | |
| vs. | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
| Defendants. | |
| JOSHUA FERENC, individually and on behalf of all others similarly situated, | Civil Action No. 07-cv-10540 (SHS) |
| Plaintiff, | |
| vs. | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
| Defendants. | |

## DECLARATION OF JAVED FIYAZ IN SUPPORT OF THE KRISTEN - STRAXTON GROUP 'S MOTION FOR CONSOLIDATION OF ALL RELATED CASES, APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

I, Javed Fiyaz, declare, under penalty of perjury under the laws of the United States of America, as follows:

1.     I am a businessman who, among other things, trades in securities for investment purposes.

2.     I respectfully submit this Declaration in Support of the Motion filed by the Kristen-Straxton Group for consolidation, appointment as Lead Plaintiff, and approval of its selection of Lead Counsel. The Kristen-Straxton Group is comprised of Kristen Management Limited ("Kristen"), Straxton Properties Inc. ("Straxton"), and myself. I

have a long standing personal and business relationship with Mr. de Cannière that precedes my investment in E*Trade securities at issue in the instant case.

3.     I understand that if the Kristen-Straxton Group is appointed lead plaintiff, it would owe a fiduciary duty to all members of the putative class to provide fair and adequate representation and to work actively with class counsel to obtain the largest possible recovery for the proposed class of E*Trade securities investors. The Kristen-Straxton Group is committed to vigorously prosecuting this action on behalf of itself and the class.

4.     The Kristen-Straxton Group will have no difficulty overseeing and participating in this litigation. I am prepared to travel to the United States and otherwise make myself available, as necessary, to prosecute the claims in the action. Kristen and Straxton will also fully cooperate with discovery.

5.     I understand that, as lead plaintiff, the Kristen-Straxton Group will be responsible for overseeing counsel. I have selected Mr. de Cannière to lead the Kristen-Straxton Group, and to act as liaison with Brower Piven, the firm we have selected as our counsel, to prosecute this litigation. Mr. de Cannière and I have discussed how we will manage the litigation together as a lead plaintiff group. While Mr. de Cannière will be responsible for the day-to-day oversight of counsel and coordination of their efforts in the prosecution of the action, Mr. de Cannière and I will regularly consult together regarding the prosecution of this matter face-to-face, by telephone and by email, and we will make any non-ministerial decisions in the case based on a consensus as to how best to proceed.

6.     I also understand that part of my responsibility as a member of a lead plaintiff group is to supervise counsel. I am prepared to do so directly or through

discussions with Mr. de Cannière.  I have personal experience retaining and supervising counsel in connection with my normal business affairs and, as necessary, on behalf of the Kristen-Straxton Group, I will supervise counsel via telephone, email, and video conference, as well as through face-to-face meetings.

Executed this 3rd day of December, 2007

_____

Javed Fiyaz

# EXHIBIT I

# BROWER PIVEN
## A PROFESSIONAL CORPORATION

With offices in New York City and Baltimore, Maryland, Brower Piven focuses it practice in the areas of complex class action and other representative litigation. The firm's practice areas, while diverse, enable Brower Piven clients to call upon experience and resources available at few firms of its size. Brower Piven clients range from institutional and large private investors, to small and large businesses, to small individual investors and retail consumers. Regardless of the size of the matter, Brower Piven provides every client with the professional service, care, and quality that Brower Piven believes every client deserves.

Attorneys at Brower Piven, some with over 25 years of experience, are nationally recognized in the class action arena. The firm's attorneys have vast experience advising and representing plaintiffs in class actions under the federal securities laws; federal and state consumer protection laws; federal and state antitrust laws; state shareholder and corporate governance laws; federal and state environmental laws; and federal RICO laws. Brower Piven attorneys have served their clients in literally hundreds of actions in virtually every state and federal court in the nation.

Some current matters in which Brower Piven has a leadership role demonstrate the scope of the firm's expertise. Brower Piven is co-lead counsel in the *In re Merck Securities, Derivative, and "ERISA" Litigation* pending in the Untied States District Court for the District of New Jersey, considered by many the largest federal securities fraud action in terms of damages in history, and co-lead and liaison counsel in the shareholder litigations challenging the proposed $38 billion take-over of Equity Office Properties Trust, one of the largest going private transaction in business history. Brower Piven is also co-lead counsel in the following federal securities class actions: *Wagner v. Barrick Gold Corporation et al.* (S.D.N.Y); *In re Interlink Electronics, Inc. Securities Litigation* (C.D. Cal.); *In re FoxHollow Technologies, Inc. Securities Litigation* (N.D. Cal); *Levie v. Sears Roebuck & Co. et al.* (N.D. Ill.); and *In re Arotech Corp. Securities Litigation* (E.D.N.Y.). Brower Piven is or was co-lead and/or liaison counsel representing shareholders in the following merger-related class actions: *Blaz v. Pan Pacific Retail Properties, Inc. et al.* (Cir. Ct., Balt. Co.); *In re Reckson Associates Realty Corp. Shareholders Litigation* (N.Y. Sup. Ct., Nassau Co.); *In re Fairchild Corp. Shareholders Litigation* (Del. Ch.); *In re Laureate Education Shareholder Litigation* (Cir. Ct. Balt. City); *In re PHH Corporation Transaction Litigation* (Cir. Ct., Balt. Co.); *In re Huntsman Corporation Shareholder Litigation* (Del. Ch.). Brower Piven is also counsel in the consumer class action, *H&R Block, Inc. "Express IRA" Marketing Litigation*, MDL No. 1786 (W.D. Mo.).

The breadth of Brower Piven's experience, which includes extensive experience counseling and representing defendants, corporations and their executives, real estate developers and large private investors in complex commercial litigation, class and non-class action litigation, and on corporate governance matters. The firm's experience on both sides of the bar makes it uniquely qualified to provide its clients with a perspective not available from firms that solely represent plaintiffs or defendants. The success of the strategy pursued by Brower Piven's attorneys in representing their clients over the years has been demonstrated by clients and classes represented by attorneys at Brower Piven attorneys recovering over $1 billion in past and pending recoveries.

The following is a sampling of the cases and results achieved by attorneys at Brower Piven where they have served as lead or co-lead counsel for plaintiffs:

*Steiner v. Southmark Corporation*, No. 3-89-1387-D (N.D. Tex.), federal securities fraud class action against defunct real estate partnership marketer and its outside accountants resulting in a recovery of over $75 million in cash for investors.

*In re Petro-Lewis Securities Litigation*, No. 84-C-326 (D. Colo.), a federal securities fraud class action on behalf of limited partners and shareholders where plaintiffs recovered over $100 million in cash and benefits including the restructuring of dozens of oil and gas limited partnerships.

*In re StarLink Products Liability Litigation*, MDL No. 1403, No. 01 C 4928 (N.D. Ill.), representing all American corn farmers in nationwide litigation against manufacturer of unapproved pesticide which alleged infected the U.S. corn supply and recovering over $125 million in cash for the class member.

*Romig v. Jefferson-Pilot Life Insurance Company*, 95 CVS 9703 (Supr. Ct. N.C.), deceptive insurance sales practices action brought on behalf of a class of Jefferson Pilot life insurance purchasers, resulting in a recovery for policyholders valued at over $55 million.

*In re MicroStrategy Securities Litigation*, No. 00-473-A (E.D. Va.), a federal securities fraud class, where over $125 million was recovered for investors, the Court commented that: "Clearly, the conduct of all counsel in this case and the result they have achieved for all of the parties confirms that they deserve the national recognition that they enjoy."

*In re Arakis Energy Corporation Securities Litigation*, No. 95-CV-3431 (ARR) (E.D.N.Y.), federal securities class action against Canadian company resulting in a recovery of over $24 million for investors.

*In re Spectrum Information Technologies Securities Litigation*, CV-93-2295 (FB) (E.D.N.Y.), securities fraud action against bankrupt issuer where over $10 million in cash was recovered (including all insurance coverage available) for investors following successful trial and appeal against directors' and officers' insurance carrier who attempted to disclaim coverage.

*In re Bristol-Myers Squibb Securities Litigation*, 92-CIV-4007 (JES) (S.D.N.Y.), federal securities class action resulting in recovery of over $19 million in cash for investors.

*Steiner v. Ideal Basic Industries, Inc.*, No. 86-M-456 (D. Colo.), federal securities class action against the former *Fortune 500* cement manufacturer resulting in an over $17.5 million recovery in cash for investors.

*In re Broadwing Securities Litigation*, No. C-1-02-795 (S.D. Ohio), federal securities class action against major public utility/broadband company resulting in a recovery of over $35 million in cash for investors.

*Berger v. Compaq Computer Corporation*, No. 00-20875 (S.D. Tex.), a federal securities class action where, after a successful appeal of a question of first impression in the federal appellate courts relating to the selection of lead plaintiffs and class certification in the Fifth Circuit under the Private Securities Law Reform Act of 1995, over $29 million was recovered for investors.

*In re Bausch & Lomb Securities Litigation*, No. 01-CV-6190 (CJS) (W.D.N.Y.), federal securities class action resulting in a recovery of over $ 12.5 million for investors.

*Slone v. Fifth Third Bancorp et al.,* No.1-:03-CV-211 (S.D. Ohio), securities fraud action against one of the largest mid-west bank holding companies, resulting in a recovery of $17 million for investors.

*Poziak v. Imperial Chemical Industries, PLC, et al.,* No. 1:03 cv 2457(NRB)(S.D.N.Y.), securities fraud action against one of the United Kingdom's largest public corporations, resulting in a recovery of approximately 90% of recoverable damages in cash for investors.

*J.E. Pierce Apothecary, Inc. v. Harvard-Pilgrim Health Care, Inc., et al,* No. 98-12635-WGY (D. Mass.), unfair and deceptive trade practices action on behalf of independent Massachusetts pharmacies against Harvard Pilgrim HMO and CVS Pharmacies, Inc. resulting, after bench trial, in excess of 100% of estimated recoverable damages for the class, including trebling.

The foregoing sampling of results is the product of the depth and breadth of the professional experience of attorneys at Brower Piven.  The firm's attorneys include:

## DAVID A.P. BROWER

Mr. Brower has over 25 years of complex litigation experience.  Mr. Brower has successfully represented plaintiffs in class action securities, consumer protection, environmental, antitrust and RICO actions, and representative shareholder derivative and take-over litigation.  Mr. Brower, a member of the Bar of the State of New York, is also admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Eleventh Circuits, and innumerable federal and state trial courts.  Mr. Brower has participated in the prosecution as lead or co-lead counsel in successful federal securities law class actions against, among others: Imperial Chemical Industries, Fifth Third Bancorp, Southmark Corp., Ideal Basic Industries, Bristol-Myers Squibb, Tower Semiconductor, Gibson Greetings, Arakis Energy Corp., Scoreboard, Coastal Healthcare, Everest & Jennings International, B.T. Office Products, Profit Recovery, Enstar Corp., Jenifer Convertibles, Warner Communications, Sambo's Restaurants, Sunrise Savings & Loan,  Phillip Morris Companies, Bausch & Lomb, Nanophase Technologies,  Ramada Inns, Michael Stores, Inc., Consumers Power Co., Broadwing/Cincinnati Bell, Compaq Computer Corp., and Computer Associates. Mr. Brower has also participated in the prosecution as lead or co-lead counsel in merger litigation on behalf of, among others, public shareholders of  Sheller Globe Corp., Petro-Lewis Corp., Floating Point Systems, Holnam Corp., Wometco Enterprises, Inc., Great Bay Casinos Corp., Home Shopping Networks, MCA, Holly Sugar Co., and ARM Financial Group; and

shareholder derivative actions on behalf of shareholders of Banner Industries, Marsh & McLennan Companies, and Merrill Lynch, Pierce, Fenner & Smith.

Since 2004, Mr. Brower has been one of the lead attorneys with day-to-day responsibility for the prosecution of the securities fraud claims in *In re Merck & Co, Securities, Derivative & ERISA Litigation*, MDL No. 1658, No. 2:05-CV-02367 (D. N.J.), an action where the damages to class member are estimated to be among the largest in the history of federal securities class litigation. Additionally, while at his former firm, Mr. Brower was one of the attorneys with primary responsibility for class certification issues, including successfully arguing the class certification motion before the trial court, in *In re Initial Public Offering Securities Litigation*, 21 MC 92 (S.D.N.Y.), among the largest securities litigations ever prosecuted, encompassing approximately 309 consolidated class action cases alleging market manipulation claims in connection with the initial public offering of securities by over 55 defendant underwriters. Mr. Brower also served as liaison counsel in *In re Sotheby's Holding, Inc. Securities Litigation*, No. 00 Civ. 1041 (S.D.N.Y.), which resulted in a recovery of over $75 million for Sotheby's investors.

Mr. Brower has also served as lead or co-lead counsel in consumer fraud actions against Aventis CropScience, Compaq Computer Corporation, Jefferson-Pilot Life Insurance Company, Sprint PCS Wireless, Metropolitan Life Insurance, Harvard Pilgrim Healthcare, and CVS Corporation. In the antitrust field, Mr. Brower acted as lead counsel in litigation against Monsanto Company, E. I. du Pont de Nemours and Company and Pioneer Hybrid International, Inc. (No. 4:05-CV-01108-ERW (E.D. Mo.)), on behalf of genetically modified seed purchasers, and has participated in the *In re Initial Public Offering Antitrust Litigation*, No. 01 CIV 2014 (WHP) (S.D.N.Y.),.

In the area of environmental law, Mr. Brower has served as one of the lead attorneys in pollution actions on behalf of Oklahoma landowners against chicken producers, including Tyson Foods, Inc.; and counsel for Missouri landowners in pork producer nuisance actions against Contigroup Companies, Inc. (formerly Continental Grain) and Premium Standard Farms, which recently resulted in verdicts in favor of neighboring farmers.

Before joining Brower Piven, Mr. Brower also has represented a nationwide class of hospitals in RICO litigation against Tenet Healthcare Corporation based on claims that its conduct caused class member hospitals to receive reduced "Outlier" reimbursements from Medicare.

Mr. Brower has also represented: directors and officers of public companies in securities class actions, including the directors of Heritage Hospitals; represented a former multi-state hospital developer; advised boards of directors of public companies regarding their fiduciary responsibilities; provided opinions as special counsel under Delaware law to public companies, including MGM/UA; represented insurance and reinsurance companies in coverage litigation, including matters involving Johns Manville, PepsiCo and Hilton Hotels; represented commodities dealers and brokers in connection with Commodities Futures Trading Commission reparations actions; represented foreign corporations in United States litigation, including one of Japan's largest electronics, international hotel and resort companies in litigation against its American counsel and financial advisors; represented a Brazilian trust holding claims for one of Brazil's largest telecommunications companies; and defended a large, Florida-based, national

4

mortgage brokerage company, Foundation Funding, in class action litigation brought under the Truth In Lending Act.

Mr. Brower, is a graduate of Columbia College of Columbia University (A.B. 1979), and the Georgetown University Law Center (J.D. 1982), and he attended King's College, University of London (1980), where he studied comparative, international, and EC transactional law. Mr. Brower regularly lectures before professional organizations and at CLE-accredited conferences on the class action procedures and securities laws and shareholder and investor rights, including the American Law Institute/American Bar Association Advanced Course of Study Program, the Practicing Law Institute, and the New York State Bar Association. Mr. Brower regularly writes on class action procedures and new issues in class action jurisprudence. Mr. Brower is a long-time member of the New York State Bar Association Subcommittee on Class Actions, has participated as a member of the Executive Committee of the National Association of Securities and Consumer Law Attorneys, and actively participated in legislative initiatives relating to the Private Securities Litigation Reform Act of 1995 and the Class Action Fairness Act of 2005.

## CHARLES J. PIVEN

Mr. Piven is a seasoned litigator who has led his own practice since 1990. During his 29 years in practice, Mr. Piven has represented individuals, partnerships, trusts, pension plans and corporations in many types of cases. Mr. Piven's experience includes litigation in the areas of complex securities, shareholder, consumer protection, personal injury and property damage class actions, merger and acquisition class actions, bankruptcy, first amendment, copyright, employment, wrongful death, and legal, medical, accounting and broker malpractice.

Class and representative actions in which Mr. Piven has served as lead, co-lead, liaison or local counsel include, among others, Baltimore Bancorp securities litigation, USFG securities litigation, Yorkridge Calvert Savings & Loan securities litigation, Maryland National Bank securities litigation, Reckson Associates Realty Company derivative litigation, Read-Rite Corporation securities litigation, Mid-Atlantic Realty shareholder merger litigation, Pan Pacific Realty shareholder merger litigation, Allied Irish Banks derivative litigation, Sprint Spectrum Cellular Telecommunications Company consumer litigation, IWIF Wiretap consumer litigation, Land Rover Group Ltd. consumer litigation, Cellular One consumer litigation, H&R Block Refund Anticipation Loan consumer litigation, Prison Telephone consumer litigation, and BlueCross/Blue Shield consumer litigation.

In recent years, Mr. Piven has taken an active role in the prosecution of litigation relating to allegations that mutual fund investors have been victimized by directed brokerage arrangements, excessive fees, excessive commissions and deceptive sales practices or other actionable conduct. Some of the mutual fund families and brokerage firms involved in these cases that Mr. Piven has been responsible for originating include: Lord Abbott, AIM/Invesco, BlackRock, Davis, Eaton Vance, Dreyfus, Evergreen, Federated, Alliance, Franklin, Hartford, MFS, PIMCO, Scudder, Columbia, Goldman Sachs, Merrill Lynch, Morgan Stanley, Salomon Smith Barney, Edward Jones, UBS, Wells Fargo and American Express. Investors in mutual fund cases initiated or led by Mr. Piven's clients have achieved a proposed settlement with mutual fund marketer Edward

Jones for over $125,000,000 and approved settlements with American Express for approximately $100,000,000 and with Merrill Lynch for approximately $39,000,000.

Mr. Piven also directly represents the lead plaintiff(s) and/or proposed class representative(s) in approximately 25% of the 309 cases encompassed by the Initial Public Offering Securities Litigation pending in the Southern District of New York, and Mr. Piven and the firm have taken an active role in the discovery in this litigation.

Mr. Piven also has experience in the field of ERISA class actions on behalf of former and current company employees. ERISA cases in which Mr. Piven is or has been counsel for named plaintiffs include: Aquila ERISA litigation (W.D. Mo.); General Motors ERISA litigation (E.D. Mich.); ConAgra Foods ERISA litigation (D. Neb.); the Coca-Cola Enterprises ERISA litigation (N.D. Ga.); Fannie Mae ERISA litigation (D. D.C.); Delphi ERISA litigation (E.D. Mich.); Ford Motor Company ERISA litigation (E.D. Mich.) and the Pfizer ERISA litigation (S.D.N.Y.).

Mr. Piven is a 1975 graduate of Washington University and a 1978 graduate of the University of Miami School Of Law. During law school, Mr. Piven was a student law clerk for the late Honorable United States District Judge C. Clyde Adkins of the Southern District of Florida. Mr. Piven was admitted to the bars of the States of Florida (currently inactive) and Maryland in 1978. Mr. Piven is a member in good standing of the Court of Appeals of Maryland, the United States Court of Federal Claims, the United States Tax Court, the United States District Court for the Districts of Maryland and Colorado, and the United States Courts of Appeals for the First and Fourth Circuits.

## MARSHALL N. PERKINS

Mr. Perkins practices in the firm's consumer and securities class action, shareholder, complex professional negligence, and tort litigation areas. Additionally, Mr. Perkins is currently, or has been actively involved with, prosecuting claims on behalf of landowners in Harford County, Maryland proceeding in the United States District Court for the Southern District of New York relating to MTBE contamination; claims of computer/hardware owners for deceptive sales practices; claims of Maryland landowners for trespass by Comcast Corp. for its overhead transmission lines; and a number of complex professional negligence cases in the Maryland Circuit Courts.

Illustrative of his previous experience, Mr. Perkins has successfully represented a proposed class of tax advisory customers alleging consumer protection claims before Maryland's highest court, see Green v. H & R Block, 355 Md. 488, 735 A.2d 1039 (1999); and a proposed class alleging violation of Maryland's wiretap statute, in Schmerling v. IWIF, 368 Md. 434, 795 A.2d 715 (2002). Mr. Perkins' business litigation experience includes representing the bankruptcy trustee in several contingent litigation matters in In re TimeWorldCom, Inc., Case No. 99-1-7353-PM, 905 A. 2d 842 (Bankr. D. Md. 2006).

Mr. Perkins is a 1997 magna cum laude graduate of the University Of Baltimore School Of Law, where he was a staff editor for the University of Baltimore Law Forum. Mr. Perkins graduated Phi Beta Kappa, magna cum laude, with a Bachelor of Arts degree from the University of

Maryland, College Park. Mr. Perkins is a member of the Bar of the State of Maryland, as well as the Bars of the Maryland Federal District Court and the United States Court of Appeals for the Fourth Circuit.

Following receipt of his *juris doctor* in May, 1997, Mr. Perkins was a law clerk to the Honorable Irma S. Raker, Judge, Court of Appeals of Maryland, Maryland's highest court. Mr. Perkins' publications include: Note, *United States v. Virginia, State May Not Maintain a "Unique" Single-Sex Educational Facility Without Providing a Comparable Facility to the Excluded Gender*, 27.1 U. Balt. L. Forum 51 (1996); *Beyond the Roar of the Crowd: Victim Impact Testimony Collides With Due Process*, 27.2 U. Balt. L. Forum 31 (1997).

## ELIZABETH A. SCHMID

Ms. Schmid is a member of the Bar of the State of New York. Ms. Schmid earned her *juris doctor* at the University of Buffalo in May 2005, where she was a National Criminal Moot Court Finals Competitor (Spring, 2005); Wechsler Intramural Moot Court Competition Winner (Fall 2004); Mock Trial competitor, Erie County Courthouse (Fall, 2004); and a contributor to the *Buffalo Women's Law Journal* (Spring, 2005). Ms. Schmid attended Sweet Briar College in Lynchburg, Virginia, and received her Bachelor of Arts from Stony Brook University in May 2000

Following her law school graduation, Ms. Schmid commenced her practice in the Office of General Counsel, Merrill Lynch, Pierce, Fenner & Smith, Inc., in New York City, where she participated in day-to-day management of significant litigation and risk management projects, and assisted in preparation of reports and litigation studies relating to securities claims, broker/dealer disputes, and investor/customer complaints.

Prior to graduating from law school, Ms. Schmid worked as a law clerk at New York's Paul, Weiss, Rifkind, Wharton, & Garrison LLP (2005), where she concentrated on large-scale discovery projects; and Watson, Bennett, Colligan, Johnson & Schechter, LLP in Buffalo, NY (2003-2004), where she obtained experience in the areas of insurance, real estate, environmental, employment, and bankruptcy law. Ms. Schmid also served in 2004 as a Legal Intern in the Office of the District Attorney for Suffolk County, New York.

**BROWER PIVEN**
A PROFESSIONAL CORPORATION

THE WORLD TRADE CENTER-BALTIMORE
401 EAST PRATT STREET, SUITE 2525
BALTIMORE, MARYLAND 21202

TELEPHONE:  (410) 332-0030
TELECOPIER: (410) 685-1300

488 MADISON AVENUE
EIGHTH FLOOR
NEW YORK, NEW YORK 10022

TELEPHONE:  (212) 501-9000
TELECOPIER: (212) 501-0300

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LARRY FREUDENBERG, Individually And On Behalf of All Others Similarly Situated, | Civil Action No. 07-cv-8538 (RWS) |
|     Plaintiff, | |
|     vs. | CLASS ACTION |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
|     Defendants. | |
| WILLIAM BOSTON, Individually And On Behalf Of All Others Similarly Situated, | Civil Action No. 07-cv-8808 (RWS) |
|     Plaintiff, | |
|     vs. | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
|     Defendants. | |
| ROBERT D. THURMAN, Individually And On Behalf Of All Others Similarly Situated, | Civil Action No. 07-cv-9651 (RWS) |
|     Plaintiff, | |
|     vs. | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
|     Defendants. | |

WENDY M. DAVIDSON, individually and on behalf of all others similarly situated,

     Plaintiff,

     vs.

E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS,

     Defendants.

Civil Action No. 07-cv-10400 (UA)

JOSHUA FERENC, individually and on behalf of all others similarly situated,

     Plaintiff,

     vs.

E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS,

     Defendants.

Civil Action No. 07-cv-10540 (SHS)

**[PROPOSED] ORDER CONSOLIDATING ALL RELATED ACTIONS, APPOINTING LEAD PLAINTIFF AND APPROVING THE SELECTION OF <u>LEAD COUNSEL</u>**

Having considered the motion of Kristen Management Limited, Straxton Properties Inc. and Javed Fiyaz (collectively, the "Kristen-Straxton Group") to consolidate all related actions, to be appointed Lead Plaintiff, and for approval of its selection of Lead Counsel; the memorandum of law in support thereof; the Declaration of Elizabeth A. Schmid, Esq. in support of that motion; all other papers submitted in connection therewith; and good cause appearing therefore,

**IT IS HEREBY ORDERED**:

1.      The above-captioned actions are hereby consolidated for all purposes (the "Consolidated Action").

        A.  This Order shall apply to the Consolidated Action and to each case that relates to the same subject matter that is subsequently filed in this Court or is transferred to this Court and is consolidated with the Consolidated Action.

        B.  A Master File is established for this proceeding. The Master File shall be Civil Action No. 07-Civ-8538. The Clerk shall file all pleadings in the Master File and note such filings on the Master Docket.

        C.  An original of this Order shall be filed by the Clerk in the Master File.

        D.  The Clerk shall mail a copy of this Order to counsel of record in the Consolidated Action.

        E.  Every pleading in the Consolidated Action shall have the following caption:

IN RE E\*TRADE FINANCIAL )
CORPORATION SECURITIES ) Civil Action No. 07-cv-8538
LITIGATION )

F.  The Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case that might properly be consolidated as part of the Consolidation Action.

G.  When a cause that arises out of the same subject matter of the Consolidated Action is hereinafter filed in this Court or transferred from another Court, the Clerk of this Court shall:

    i.    File a copy of this Order in the Separate file for such action;

    ii.    Mail a copy of this Order to the attorneys for the plaintiff(s) in the newly-filed or transferred case and to any new defendant(s) in the newly-filed case; and

    iii.    Make the appropriate entry in the Master Docket for the Consolidated Action.

H.  Each new case that arises out of the subject matter of the Consolidated Action which is filed in this Court or transferred to this Court, shall be consolidated with the Consolidated Action and this Order shall apply thereto, unless a party objects to the consolidation, as provided for herein, or any provision of this Order, within ten (10) days after the date upon which a copy of this Order is served on counsel for such party, by filing an application for relief and this Court deems it appropriate to grant such application. Nothing in the forgoing

shall be construed as a waiver of the defendants' right to object to consolidation of any subsequently-filed or transferred related action.

2.    The Kristen-Straxton Group is appointed to serve as lead plaintiff in the above-captioned consolidated action pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

3.    The law firm Brower Piven, A Professional Corporation ("Brower Piven") is hereby approved as Lead Counsel for the Class.  Brower Piven shall provide general supervision of the activities of plaintiff's counsel and shall have the following responsibilities and duties to perform or delegate as appropriate:

A.  To brief and argue motions;

B.  To initiate and conduct discovery, including, without limitation, coordination of discovery with defendants' counsel, the preparation of written interrogatories, requests for admissions, and requests for production of documents;

C.  To direct and coordinate the examination of witnesses in depositions;

D.  To act as spokesperson at pretrial conferences;

E.  To call and chair meetings of plaintiffs' counsel as appropriate or necessary from time to time;

F.  To initiate and conduct any settlement negotiations with counsel for defendants;

G.  To provide general coordination of the activities of plaintiffs' counsel and to delegate work responsibilities to selected counsel as may be required in such a manner as to lead to the orderly and efficient

prosecution of this litigation and to avoid duplication or unproductive efforts;

H.  To consult with and employ experts;

I.  To receive and review periodic time reports of all attorneys on behalf of plaintiffs, to determine in the time is being spent appropriately and for the benefit of plaintiffs, and to determine and distribute plaintiffs' attorney's fees, and;

J.  To perform such other duties as may be expressly authorized by further order of this Court.


**IT IS SO ORDERED**.


DATED:_____


_____
Honorable Robert W. Sweet
United States District Judge